O

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 13-00341-JGB (OPx)** | Date | March 24, 2014 |
|---|---|---|---|

| Title | *Haggag v. Welch Foods, Inc., et al.* |
|---|---|

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   ORDER (1) DENYING DEFENDANT'S MOTION FOR RULING WHETHER WELCH'S LABEL CONSTITUTES A HEALTH CLAIM (DOC. NO. 33); (2) DENYING PLAINTIFF'S MOTION FOR RULING THAT DEFENDANTS' "HEART-HEALTH" LABEL IS A HEALTH CLAIM; AND (3) DISMISSING THE ACTION WITHOUT PREJUDICE (IN CHAMBERS)

      This is a putative class action asserting that Defendants misbranded their products in violation of the Food Drug and Cosmetics Act ("FDCA") by including a health claim that does not comply with the regulations promulgated by the Food and Drug Administration ("FDA"). Plaintiff Ahmed Haggag claims that because the label violates the FDCA, the products are in violation of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), California Health and Safety Code § 109875 *et seq.* Based on these allegations, Plaintiff alleges claims under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), the Consumers Legal Remedies Act ("CLRA"), and California common law.

      Before the Court are the parties' cross-motions regarding the issue of whether Defendant Welch Foods, Inc.'s label constitutes a health claim. (Doc. Nos. 33, 34.) Also before the Court are the parties' respective supplemental briefs regarding the issues of primary jurisdiction and preemption. (Doc. Nos. 39, 40.) For the reasons set forth below, the Court (1) DENIES Plaintiff's Motion for Legal Determination that Defendant's "Heart-Health" Label is a Health Claim; (2) DENIES Defendant's Motion for Ruling Whether Welch's Label Constitutes a Health Claim; and (3) DISMISSES Plaintiff's action WITHOUT PREJUDICE.

**I.   BACKGROUND**

A.    **Factual Background**

Welch Foods sells a 100% Grape Juice product in a bottle with a label containing the massage, "Helps Support a Healthy Heart." (First Amended Complaint ("FAC"), ¶ 6; Exh. 1 to Declaration of Jordan L. Lurie in Support of Plaintiff's Motion ("Lurie Decl.").) The message is displayed inside or near a heart symbol. (Exh. 1 to Lurie Decl.) On some bottles, those label elements also appear on the back panel of the label near text that states "As part of a healthy diet and active lifestyle, Welch's 100% Grape Juice, made with Concord grapes, helps support a healthy heart" (the front and back labels are collectively referred to as the "Heart Health Label"). (Id.)

Plaintiff claims he regularly purchased bottles of Welch's 100% Grape Juice approximately every two weeks over the past two years, including bottles with the Heart Health Label. (FAC, ¶ 24.) Plaintiff claims that he read and relied upon the Heart Health Label at the time of purchase and selected Welch's 100% Grape Juice over other less expensive alternatives because of the Heart Health Label. (FAC, ¶ 25.)

Plaintiff's claims arise from the alleged violation of FDA regulations. Specifically, Plaintiff alleges that since the Heart Health Label is a health claim, it cannot be made unless it is specifically provided for in 21 C.F.R. § 101, Subpart E, which provides a list of categories of permissible health claims. Plaintiff alleges that the Heart Health Label does not fall under any of the categories established by the FDA. Based on these allegations, Plaintiff alleges violation of various state statutory and common laws. (See FAC.)

B.    **Procedural Background**

On February 22, 2013, Plaintiff filed his Complaint against Welch Foods, Inc. and Welch's Inc. (collectively "Defendants") alleging claims under the UCL, FAL, CLRA, and common law. (Doc. No. 1.) Defendant Welch Foods, Inc. filed its Answer on April 8, 2013. (Doc. No. 10.) Plaintiff filed his FAC on April 29, 2013. (Doc. No. 15.)

Pursuant to the Stipulation and Joint Report that the parties filed on September 4, 2013, the parties agreed that the issue of whether the use of the "Heart Health" label constitutes a health claim or a structure function claim can be determined by the Court as a matter of law and will determine whether the case proceeds to the next phase. (Doc. No. 29.) Pursuant to the parties' stipulation, on October 22, 2013, the Court issued an order setting the briefing schedule for the cross-motions. (Doc. No. 32.)

On November 11, 2013, Defendant Welch Foods, Inc. ("Welch Foods") filed its Opening Brief as to the Legal Issue of Whether the Welch's Label constitutes a Health Claim. (Defendant's Opening Brief ("Def. Op. Br.") (Doc. No. 33).) On November 11, 2013, Plaintiff filed his Motion for Legal Determination that Defendants' "Heart-Health" Label is a Health Claim. (Plaintiff's Motion ("Pl. Op. Br.") (Doc. No. 34).)

On November 25, 2013, Welch Foods filed its Responsive Brief.  (Defendant's Responsive Brief ("Def. Resp. Br.") (Doc. No. 36).)  On November 25, 2013, Plaintiff filed his Opposition to the Opening Brief of Defendant.  (Plaintiff's Opposition ("Pl. Resp. Br.") (Doc. No. 37).)

On December 9, 2013, the Court heard oral argument as to the parties' motions.  (Doc. 38.)  During that hearing, the Court directed the parties to submit cross briefs regarding the issues of primary jurisdiction and preemption no later than December 23, 2013.  (Id.)

On December 23, 2013, Welch Foods filed its Supplemental Brief Regarding Primary Jurisdiction ("Defendant's Suppl. Brief").  (Doc. No. 39.)  Plaintiff filed his Supplemental Brief Regarding Whether the Doctrines of Primary Jurisdiction or Preemption Preclude This Court's Consideration of the Pending Cross Motions Regarding Welch's Heart-Health Label ("Plaintiff's Suppl. Brief").  (Doc. No. 40.)

## II.  DISCUSSION

**A.     Summary of Main Issue**

The sole issue before the Court in the parties' motions is whether the Heart Health Label on Welch's 100% Grape Juice package constitutes a health claim within the meaning of the applicable FDA regulations.

> The FDA defines a "health claim" as:
> [A]ny claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (e.g., a brand name including a term such as "heart"), symbols (e.g., a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition.  Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition.

21 C.F.R. § 101.14(a)(1).  "Disease or health-related condition means damages to an organ, part, structure, or system of the body such that it does not function properly (e.g., cardiovascular disease), or a state of health leading to such dysfunctioning (e.g., hypertension) . . ." § 101.14(a)(5).  In addition, for a substance to be eligible for a health claim, "[t]he substance must be associated with a disease or health-related condition for which the general U.S. population, or an identified U.S. population subgroup (e.g., the elderly) is at risk . . ." § 101.14(b)(1).

The parties agree that the Heart Health Label cannot constitute an express health claim since there is no explicit reference to a disease or health-related condition.  (Def. Op. Br. at 10; Pl. Resp. Br. at 4.)  The Heart Health Label states "Helps Support A Healthy Heart" on the front of the label.  (Exh. 1 to Lurie Decl.)  The back of the label contains the text: "As part of a healthy diet and active lifestyle, Welch's 100% Grape Juice, made with Concord grapes, helps support a healthy heart."  (Id.)  There is no express reference in that language to any disease or health-

related condition. Therefore, the issue is whether the Heart Health Label constitutes an implied health claim subject to FDA regulations.

The gravamen of Plaintiff's argument is that the Heart Health label, which includes a heart symbol, the written statement that Welch's 100% Grape Juice helps support a healthy heart, and reference to Welch's website, constitutes an implied health claim because it suggests, within the context in which it is presented, that a relationship exists between Welch's 100% Grape Juice and heart disease. Welch Foods contends that the Heart Health Label cannot constitute a health claim because it lacks any reference to a disease or health-related condition. Further, Welch Foods contends that because the Heart Health Label is a structure/function claim, it cannot simultaneously be a health claim since the two classifications are mutually exclusive.

### B.      Primary Jurisdiction Doctrine

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "A court's invocation of the doctrine does not indicate that it lacks jurisdictions." Id. (internal citation omitted). "Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002).

"There are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." U.S. v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987) (internal citations omitted).

"The doctrine does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002) (internal citation omitted). "Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Id.; see also General Dynamics Corp., 828 F.2d at 1362 (internal citation and quotations omitted) ("The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.").

### C.      Invocation of the Doctrine

Both parties present compelling arguments on whether the Court should apply the doctrine of primary jurisdiction and defer to the FDA for a determination of whether the Heart Health Label constitutes an implied health claim. For the reasons set forth below, the Court finds that the General Dynamics factors are met here and the primary jurisdiction doctrine applies.

Applying the second and third factors listed in General Dynamics, "[t]he FDCA . . . comprehensively regulates food and beverage labeling." Pom Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170, 1175 (9th Cir. May 17, 2012); see also Hood v. Wholesoy & Co, Modesto Wholesoy Company LLC, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013) (citing 21 U.S.C. § 341 et seq.) ("The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers."). "The FDA . . . has promulgated regulations that address how a manufacturer may name and label its juice beverages." Pom Wonderful, 679 F.3d at 1175 (citing 21 C.F.R. § 102.33(c), (d)). Congress passed the Nutrition Labeling and Education Act ("NLEA") "to clarify and to strengthen the Food and Drug Administration's legal authority to regulate nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7, reprinted in 1990 U.S.C.C.A.N. 3336, 3337. Therefore, when Congress enacted the FDCA, it placed the authority to regulate food labeling within the jurisdiction of the FDA, which "has extensively regulated food labeling in the context of a labyrinthine regulatory scheme." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010); see also 21 U.S.C. 343; 21 C.F.R. § 101.1 et seq.

Plaintiff contends that "[t]he cross-motions simply require the Court to apply existing FDA regulations and guidance to the instant Welch's label." (Pl. Suppl. Br. at 3.) Welch Foods responds that "[t]he FDA has never adopted Plaintiff's position that the use of a heart vignette on a conventional food disqualifies the label as a structure/function claim (no matter what language is used) and renders the label a health claim such that only model health claim language may be used." (Def. Suppl. Br. at 5.)

Here, the parties request that the Court decide this preliminary issue before proceeding with the case precisely because the FDA has not issued regulations regarding the use of a heart vignette with additional language on food labels. The Court understands that "challenges to *any* food product that is not already explicitly listed in the regulations" might be narrowly described as issues of "first impression." See Allen v. ConAgra Foods, Inc., 2013 WL 4737421, at *9 (N.D. Cal. Sept. 3, 2013) (finding that the question of which reference amount requirement applies to the food at issue "can be answered by apply [FDA] regulations in a straightforward manner"). However, as the Ninth Circuit stated in Pom Wonderful, "for a court to act when the FDA has not—despite regulating extensively in this area—would risk undercutting the FDA's expert judgments and authority." Pom Wonderful, 679 F.3d at 1177 (discussing the authority of the FDA to regulate food labeling in the context of determining whether the FDCA and its regulations precluded the plaintiff's Lanham Act false advertising claims).

In this case, the FDA found that no "'bright line' definition can be established for implied health claims." Food Labeling; General Requirements for Health Claims for Food, 58 Fed. Reg. 2478, 2483 (Jan. 6, 1993) (to be codified 21 C.F.R. pts. 20, 101). Although the FDA issued guidance stating that it "believes that most of the perceptions about heart symbols fall under the regulatory regime of a health claim," it has not issued formal regulations holding that a heart symbol always constitutes an implied health claim regardless of accompanying language. Id. at 2486. Rather, the FDA noted that it "revised the definition of an implied health claim in new § 101.14(a)(1) to clarify that the claim will be evaluated within the context of the total labeling to determine if an implied health claim has been made." Id. at 2483. The FDA explicitly stated

that "[it] will evaluate all of the labeling to determine whether, within the context in which a claim is presented, both basic elements of a health claim are present." Id.

It is evident from the FDA's commentary that it assumed the role of deciding whether a particular claim qualifies as an implied health claim. Perhaps more importantly, it is clear that the FDA has consciously refrained from establishing a precise definition for implied health claims, including determining whether a heart vignette accompanied with language constitutes an implied health claim. In the absence of such a clear definition or regulation by the FDA, should the Court go forward with determining whether the Heart Health Label constitutes an implied health claim, "it would find itself in a position of either having no set standard to apply, or announcing a standard and thereby overstepping its proper role." Hood, 2013 WL 3553979, at *6 (finding that it was appropriate to defer to the authority and expertise of the FDA to say what the appropriate rules should be with respect to "soy yogurt" and "evaporated cane juice" where the plaintiff brought a class action alleging that the defendant's products did not comply with requirements of the FDCA as adopted by the California Sherman Law). Therefore, "[r]endering a decision based on what this Court believes the FDA might eventually decide on [this issue] 'would usurp the FDA's interpretive authority.'" Id. (quoting Pom Wonderful, 679 F.3d at 1176).

As to the fourth factor set forth in General Dynamics, resolution of the issue presented to the Court requires expertise and uniformity in administration. "Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration." Monster Beverage Corp. v. Herrera, 2013 WL 4573959, at *15 (C.D. Cal. Aug. 22, 2013). As Welch Foods points out, when the FDA acts, its actions affect an entire industry. However, if the Court decides whether the Heart Health Label here constitutes an implied health claim, it runs the risk of issuing a decision that is inconsistent with the FDA's regulatory scheme or later-issued guidance. Since the FDA explicitly stated that there is no bright-line definition for implied health claims, which must be evaluated on a case-by-case basis, decisions as to implied health claims are best left to the FDA, which can determine such claims uniformly. Moreover, it would be inappropriate to decide the issue, which is committed to the FDA's expertise, "without a clear indication of how the FDA would view the issue." Watkins v. Vital Pharmaceuticals, Inc., 2013 WL 5972174, at *3 (C.D. Cal. Nov. 7, 2013) (internal citation and quotations omitted). Accordingly, the Court should defer to the FDA for resolution of the issue. See General Dynamics, 828 F.2d at 1362 (holding that "it is the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in judicial proceedings that determines the scope of the primary jurisdiction doctrine").

Plaintiff lists multiple cases where courts have declined to defer to the FDA. (Pl. Suppl. Br. at 2-3.) The Court finds those cases distinguishable. For example, in Kosta v. Del Monte Corp., 2013 WL 2147413 (N.D. Cal. May 15, 2013), the court held that the doctrine of primary jurisdiction did not bar the claims because the plaintiffs "[were] not asking the Court to create new requirements or interpret what the FDA might find, but only to enforce what the FDA and identical California law already require." Kosta, 2013 WL 2147413, at *9. As stated above, the Court finds that the parties are requesting the court decide the issue based on what this Court believes the FDA might eventually decide since the FDA has explicitly stated that a label must be decided on a case-by-case basis and within the context of the total labeling to determine whether it constitutes an implied health claim. While the court in Kosta relied on the FDA's

informal policy guidance, the Court finds that such reliance would result in potential inconsistent opinions.  In Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889, 898-899 (N.D. Cal. 2012), the court declined to apply the doctrine of primary jurisdiction to a case involving "natural" claims in part because "various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word 'natural' and the FDA has declined to do so . . . ."  Unlike Jones, there is no evidence here that parties have asked the FDA to determine whether a heart vignette accompanied by words such as "Helps support a healthy heart" qualify as an implied health claim.  Nor is there evidence that the parties have requested that the FDA adopt formal rulemaking to define "implied health claims."  Accordingly, the Court finds those cases inapposite.

Since the Court finds that the doctrine of primary jurisdiction applies to the issue of whether the Heart Health Label constitutes an implied health claim, the Court finds it unnecessary to determine whether the FDCA preempts Plaintiff's state law claims.

**D.     Mode of Referral[1]**

The doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."  Reiter v. Cooper, 507 U.S. 258, 268 (1993) (internal citations omitted).  "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."  Id. at 268-69 (internal citations omitted).  The decision to either stay or dismiss the case without prejudice is within the discretion of the district court.  See Davel Communications, Inc. v. Qwest Corp., 460 F.3d 1075, 1091 (9th Cir. 2006).  "The factor most often considered in determining whether a party will be disadvantaged by dismissal without prejudice is whether there is a risk that the statute of limitations may run on the claims pending agency resolution of threshold issues."  Id. (citing Syntek, 307 F.3d at 782; Brown, 277 F.3d at 1173).

Here, Plaintiff brings claims against Defendant under the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), the Consumers Legal Remedies Act ("CLRA"), and California common law.  The statute of limitations for UCL claims is four years.  Cal. Bus. & Prof. Code § 17208.  Likewise, Plaintiff's cause of action for breach of quasi contract is subject to a four-year statute of limitations.  Cal. Civ. Proc. Code § 337; Diorio v. Coca-Cola Co., 2009 WL 483190, at *2 (S.D. Cal. Feb. 24, 2009).  The CLRA and FAL claims are covered by three-year statutes of limitations.  Cal. Civ. Code § 1783 ("Any action brought under the

---

[1] There is no evidence that Plaintiff or the FDA has initiated any action to determine whether Welch Foods' Heart Health Label constitutes an implied health claim.  Plaintiff contends that the "FDA has been asked to adopt specific additional regulations regarding the application of structure function claims to conventional foods, and the FDA has declined to do so . . . ." (Pl. Suppl. Br. at 5.)  The Court finds the FDA's decision irrelevant to this action since the issue here is whether the Heart Health Label constitutes an implied health claim.

specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice"); Cal. Civ. Proc. Code § 338(a) ("An action upon a liability created by statute, other than a penalty or forfeiture" shall be brought within three years); Rodarte v. Phillip Morris, Inc., 2013 WL 23341208, at *2 (C.D. Cal. June 23, 2003) (noting that the plaintiffs' claims "for negligent and intentional false and misleading advertising under California Business and Professions Code §§ 17500, et seq. ("FAL claims") are subject to a three-year statute of limitations"). Plaintiff's negligent misrepresentation claim is subject to a two-year statute of limitations. See Cal. Civ. Proc. Code § 339(1); Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1054 (9th Cir. 2008).

Plaintiff alleges that he "regularly purchased bottles of Welch's 100% Grape Juice approximately every two weeks over the past two years . . ." (FAC, ¶ 24.) Plaintiff initiated this action on February 22, 2013. (Complaint (Doc. No. 1).) Plaintiff filed his FAC on April 29, 2013. (FAC (Doc. No. 15).) Pursuant to 21 C.F.R. § 10.30, a person may file a citizen petition with the FDA, and the Commissioner may approve the petition, deny the petition, or provide a tentative response. 21 C.F.R. §§ 10.30(a), (e)(2)(i)-(iii); see also 21 C.F.R. §10.25(a) ("An interested person may petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action."). The Commissioner shall furnish a response to each petition within 180 days of receipt of the petition.[2] 21 C.F.R. § 10.30(e). Therefore, Plaintiff has ample opportunity to bring his claims against Welch Foods once the FDA furnishes a response to Plaintiff's citizen petition.

In addition, the statutes of limitations might be tolled during the pendency of the FDA proceedings. Watkins, 2013 WL 5972174, at *5 (stating that the figures it provided for the running of the statutes of limitations "are conservative as they do not factor in any time that might be tolled while the FDA reviews Plaintiff's administrative complaint"); Mt. Hood Stages, Inc. v. Greyhound Corp., 616 F.2d 394, 396-400 (9th Cir. 1980) (finding that congressional purposes under the Clayton Act and the Interstate Commerce Act "would be served by tolling the statute of limitations during the [Interstate Commerce] Commission proceeding"). But see, U.S. v. Dan Caputo Co., 152 F.3d 1060, 1062 (9th Cir. 1998) ("We also note that because this court has not clearly adopted the doctrine of equitable tolling in primary jurisdiction cases, there is a possibility that [the plaintiff] would be unfairly disadvantaged by the district court's order of dismissal."); Davel Communications, Inc. v. Qwest Corp., 460 F.3d 1075, 1091 (9th Cir. 2006) (holding that "where the court suspends proceedings to give preliminary deference to an administrative agency but further judicial proceedings are contemplated, then jurisdiction should ordinarily be retained via a stay of proceedings, not relinquished via a dismissal"). Accordingly, the Court finds that dismissal without prejudice will not unfairly disadvantage Plaintiff and "that this mode of deferral is appropriate given the fact that neither the Plaintiff nor the FDA has yet to initiate any action against" Defendant's Heart Health Label. Watkins, 2013 WL 5972174, at *5.

---

[2] In the case of a tentative response, the Commissioner "may also indicate the likely ultimate agency response, and may specify when a final response may be furnished." 21 C.F.R. § 10.30(e)(2)(iii). Accordingly, while the Commissioner must provide a response within 180 days, a final decision may not be reached until a later date.

## III. CONCLUSION

For the reasons set forth above, the Court (1) DENIES Plaintiff's Motion for Legal Determination that Defendant's "Heart-Health" Label is a Health Claim; (2) DENIES Defendant's Motion for Ruling Whether Welch's Label Constitutes a Health Claim; and (3) DISMISSES Plaintiff's action WITHOUT PREJUDICE.

**IT IS SO ORDERED.**